# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# BOWLING GREEN DIVISION
# CASE NO. 1:09-CV-00016-R

ROBERT LINCOLN and
LISA LINCOLN                                                                        PLAINTIFFS

v.

STATE FARM FIRE AND CASUALTY CO.                                          DEFENDANT

## MEMORANDUM OPINION & ORDER

This matter comes before the Court upon Defendant's Motion for Summary Judgment (DN 29). Plaintiffs have responded (DN 31) and Defendant has replied (DN 57). This matter is now ripe for adjudication. For the reasons that follow, Defendant's Motion is DENIED IN PART and GRANTED IN PART.

## BACKGROUND

This action arises out of a fire to the residence of the Plaintiffs, Robert and Lisa Lincoln, on December 11, 2007. Plaintiffs insured the home under a policy issued by Defendant State Farm Fire and Casualty Company ("State Farm"), with a dwelling coverage of $154,400 and contents coverage of $117,884. Plaintiffs claim they sustained a loss in excess of that coverage, and therefore are entitled to recover the full amount allowed under the policy.

The morning of the fire, Plaintiffs contacted their State Farm agent who in turn notified State Farm. Claim Representative Jan McMillan spoke to Mr. Lincoln that day and met with both Plaintiffs the day after the fire. McMillan issued a $10,000 advance on their contents claim and instigated a cause and origin investigation to be performed.

Around the time of the investigation, Plaintiffs stated that the house would have to be totaled and rebuilt because the framing had swelled. McMillan disagreed, stating that only the

living room had suffered framing damage and the rest of the house was not damaged. McMillan's opinion was confirmed by a March 3, 2008, report of Donan Engineering. Prior to receiving this report, on February 15, 2005, McMillan received a letter from Plaintiffs' attorney containing several estimates from contractors to rebuild the house in excess of $225,000. Meanwhile, State Farm requested that a contractor inspect the home and provide a repair estimate. The contractor assured that the house was repairable, and supplied an estimate of the cost to repair at $134,151.84. State Farm offered to settle the dwelling claim based on this estimate, but Plaintiffs refused. On July 18, 2008, Plaintiffs' new attorney requested payment for the dwelling damage based on the estimate, and McMillan issued a check for $132,853.93, which excluded the Plaintiffs' deductible.

Additionally, on April 25, 2008, Plaintiffs submitted personal property inventories ("PPIs"), claiming $472,294.07 for the replacement of their personal property. McMillan was concerned that the PPIs reflected many recent purchases and items that did not fit with the size of the home and Plaintiffs' lifestyle. On May 2, 2008, based upon indicators such as personal property loss inventory which included an unusually high amount of recent purchases and was not compatible with the home, lifestyle, income and recent bankruptcy of Plaintiffs, Team Manager Michael Hayden made a partial referral of the claim to State Farm's Special Investigative Unit ("SIU") to assist with an investigation of the contents claim. The investigation was assigned to SIU Claim Representative Chuck Coppinger.

Coppinger determined that the extent of Plaintiffs' claimed purchases failed to comport with their financial means. For example, among the items on Plaintiffs' PPI forms allegedly destroyed in the fire were: (in the upstair girls' bedroom) 39 Capri pants costing between $29.99

2

and 39.00 each; 151 tank tops between $15.99 and 39.99; 59 hoodies between $39.99 and $69.99; 44 t-shirts between $21.99 and 59.00; 26 sweaters between $43.00 and $73.00; (in the boys' bedroom) 649 dress shirts; 241 t-shirts; 393 pairs of shorts; 554 pairs of pants; 236 hoodies; 124 turtlenecks; 63 X-Box games; 158 DVDs and 70 VHS tapes. Of the $472,294 claimed, $172,395 of the contents were allegedly purchased in 2007, $196,175 were purchased in 2006 and $88,168 were purchased in 2005.

As Plaintiffs informed Coppinger, they were in the midst of a Chapter 13 bankruptcy which they had filed on November 14, 2006. They had stopped making payments on their mortgage in October 2007 when their adjustable rate increased. And according to their tax returns, their income in 2005 was $74,226, in 2006 was $68,215, and in 2007 was only $23,431.

Coppinger sent Plaintiffs a letter requesting "some sort of itemized documentation, such as sales receipts, cancelled checks, credit card statements, etc. to verify the price of an item, ownership, and date purchased" for certain items on Plaintiffs' PPIs. Coppinger also inspected the scene on May 21, 2008, for evidence of the contents on the PPI forms. He found a discrepancy between the age and brands of electronic items and appliances listed in the forms and the items he found.

State Farm also points to the discrepancy between the items listed in the PPIs and the items reported to the Bankruptcy Court. Schedule B of Plaintiffs' Chapter 13 Voluntary Bankruptcy Petition required Plaintiffs to "list all personal property of the debtor of whatever kind." Plaintiffs listed some of the same types of personal property that they listed in the PPIs, but valued such property at $5,650. Similarly, a bankruptcy court appraiser valued the non-business personal property in Plaintiffs house at $4,615. Plaintiffs did not list many items of

significant value in their bankruptcy schedules. The Schedules to Plaintiffs' Bankruptcy Petition and a Statement of Financial Affairs were filed before the fire, on January 2, 2007.

After the fire, on March 26, 2008, Plaintiff filed a motion to suspend Chapter 13 plan payments with the Bankruptcy Court. Paragraph Four of the motion stated: "Suspension of payments is needed because the debtors residence was destroyed by fire on December 11, 2008 and they have had extraordinary expenses since that time. As of this date, no final insurance settlement has been made." On April 30, 2008, they filed a second motion with the same language. That same day, they filed a motion to modify their Chapter 13 plan, requesting that their monthly payments be reduced from $1,313 to $942 because Mrs. Lincoln lost her job. The bankruptcy court granted the motion to modify on July 24, 2008. On November 6, 2008, the bankruptcy case was dismissed.

On December 10, 2008, Plaintiffs filed the present action against State Farm. Plaintiffs' current claim for damages is the difference between the amount paid by State Farm and the policy limits: $20,908 for damage to the house and $95,884 for damage to personal property. State Farm argues that Plaintiffs' claims are barred in whole or in part by judicial estoppel. Secondly, State Farm argues that Plaintiffs' misrepresentations of the existence and value of their personal property voids the policy. Finally, State Farm argues that Plaintiffs' bad faith claim fails because it had a reasonable basis to deny their claim.

**STANDARD**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In

determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996). Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## ANALYSIS

### A. Judicial Estoppel

"The doctrine of judicial estoppel forbids a party 'from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding.'"

*Teledyne Indus., Inc. v. Nat'l Labor Relations Bd.*, 911 F.2d 1214, 1217 (6th Cir. 1990) (citation omitted); see also *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). "In order to invoke judicial estoppel, a party must show that the opponent took a contrary position under oath in a prior proceeding and that the prior position was accepted by the court." *Teledyne*, 911 F.2d at 1218; *see also Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002)). "[J]udicial estoppel does not bar a party from contradicting itself, but from contradicting a court's determination that was based on that party's position." *Teledyne*, 911 F.2d at 1218 n. 3. "Judicial estoppel is applied with caution to avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement." *Id.* at 1218.

"[P]ursuing a cause of action that was not disclosed as an asset in a previous bankruptcy filing creates an inconsistency sufficient to support judicial estoppel." *Lewis v. Weyerhaeuser Co.*, 141 F. App'x 420, 425 (6th Cir. 2005) (citing *Eubanks v. CBSK Fin. Group, Inc.*, 385 F.3d 894, 898 (6th Cir. 2004) and *Browning*, 283 F.3d at 775). Additionally, a bankruptcy court's approval of a "payment from the bankruptcy estate on the basis of a party's assertion of a given position" constitutes "sufficient 'judicial acceptance' to estop the party from later advancing an inconsistent position." *Reynolds v. Comm'r of Internal Revenue*, 861 F.2d 469, 473 (6th Cir. 1988).

The Court finds that both of these prerequisites for applying judicial estoppel are present in this case. First, Plaintiffs' cause of action against State Farm was not properly disclosed to the bankruptcy court. No question of fact exists regarding whether Plaintiffs amended their bankruptcy schedules after the fire to include the potential claim against State Farm: they did not. Plaintiffs argue that judicial estoppel is inappropriate because they were not aware of the

6

claim at the time they filed their bankruptcy action, but this ignores their continuing duty to disclose all assets or potential assets during the pendency of the bankruptcy proceedings. *See Lewis*, 141 F. App'x at 425; 11 U.S.C. § 541(a)(7). Second, the bankruptcy court's adoption of the modified payment plan on July 24, 2008, constitutes sufficient judicial acceptance to estop the Plaintiffs' from later asserting a claim.

Judicial estoppel does not apply, however, "where the prior inconsistent position occurred because of 'mistake or inadvertence.'" *Lewis*, 141 F. App'x at 425 (citing *Browning*, 283 F.3d at 776). "[T]he failure to disclose a cause of action may be deemed inadvertent where (1) 'the debtor lacks the knowledge of the factual basis of the undisclosed claims,' or (2) 'the debtor has no motive for concealment.'" *Id.* at 425-26 (citing *Browning*, 283 F.3d at 776). The Court also considers the "absence of bad faith" when determining judicial estoppel. *Eubanks*, 385 F.3d at 895.

Here, Plaintiffs knew of the factual basis of the undisclosed claim and had a motive for concealment. They were aware of the fire and the potential claim against State Farm while the bankruptcy proceeding was pending. And as the Sixth Circuit has noted, "[i]t is always in a Chapter 13 petitioner's interest to minimize income and assets." *Lewis*, 141 F. App'x at 426.

Plaintiffs argue that the reference to the fire and lack of insurance settlement in the two motions to suspend payments to the bankruptcy court shows that their omission was inadvertent. In *Eubanks*, the court found that judicial estoppel did not apply despite plaintiffs' omission of their cause of action from the bankruptcy schedules because they had attempted to amend the schedules and had "put the court and the Trustee on notice through correspondence, motions, and status conference requests." 385 F.3d at 899. The plaintiffs in that case:

7

> (1) notified the bankruptcy trustee of the claim during a meeting and the trustee requested all of the documents regarding the claim; (2) asked the trustee on several occasions over several months whether he intended to pursue the claim on behalf of the estate; (3) moved the bankruptcy court for a status conference on the issue of the lender liability claim; (4) unsuccessfully moved to allow the trustee to be substituted for plaintiffs in the lender liability action after the action was filed and after the trustee refused to abandon the claim in the bankruptcy proceeding; and (5) filed an amendment to their original bankruptcy petition to add the lender liability action to their bankruptcy schedules after the defendant filed a motion to dismiss on the basis of judicial estoppel.

*Lewis*, 141 F. App'x at 426 (summarizing facts of *Eubanks*). The court found that the plaintiffs' "constant affirmative actions clearly establish[ed] a desire to apprise the court of the pending claim." *Eubanks*, 385 F.3d at 899 n.2. "Thus, under *Eubanks*, even if the debtor has knowledge of a potential cause of action and a motive to conceal it, if the plaintiff does not actually conceal it and instead takes affirmative steps to fully inform the trustee and the bankruptcy court of the action, it is highly unlikely that the omission in the bankruptcy petition was intentional." *Lewis*, 141 F. App'x at 426. "In such a case, the equitable principles governing judicial estoppel do not support its application." *Id.*

The Court agrees with State Farm's contention that Plaintiffs' disclosure of the fire in the motions to suspend payments pales in comparison to the steps that the plaintiffs in *Eubanks* took to advise the bankruptcy court and trustee of their potential cause of action. On the other hand, Plaintiffs did not completely hide the potential claim from the bankruptcy court and trustee. *Contra Lewis*, 141 F. App'x at 427 (finding plaintiff never made any attempt to inform the bankruptcy court of her potential discrimination action). Plaintiffs' actions do not clearly evidence bad faith or good faith.

"[J]udicial estoppel 'is an equitable doctrine invoked by a court at its discretion.'" *New*

*Hampshire*, 532 U.S. at 750. The Court has decided to exercise its discretion in this matter and not estop Plaintiffs' claim against State Farm despite facts that technically justify the doctrine's application. This determination partially rests on the fact that Plaintiffs did mention the fire and lack of insurance settlement to the bankruptcy court. The facts of this case can also be distinguished from prior Sixth Circuit cases dealing with this issue. The claim against State Farm is to reimburse Plaintiffs' for the loss of their home and personal property destroyed in the fire. If successful, they will not gain assets, but rather will be reimbursed for destroyed assets that had been previously reported in bankruptcy. In this way, by failing to report the potential claim Plaintiffs did not hide a source of extra assets to the bankruptcy court or trustee. This reasoning does not excuse their omission, but the Court believes the application of judicial estoppel is not the proper way to resolve the present action.

Similarly, the Court finds that judicial estoppel is not the proper way to limit Plaintiffs' personal property claim. This issue requires an examination of the value of Plaintiffs' personal property as of the fire on December 11, 2007. State Farm may, however, use Plaintiffs' Schedule B as evidence of the value of Plaintiffs' personal property as of January 2, 2007.

**B. Misrepresentations**

State Farm asserts that Plaintiffs misrepresented material facts in the presentation of their contents claim and that these misrepresentations void their policy. Plaintiffs' policy included the following provision:

> 2. **Concealment or Fraud.** This policy is void as to you and any other **insured** under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

The Kentucky Supreme Court has also held that misrepresentations regarding loss void an entire

9

insurance policy as a matter of law. *Home Ins. Co. v. Hardin*, 528 S.W.2d 723, 725 (Ky. 1975); *see also Baymon v. State Farm Ins. Co.*, 257 F. App'x 858 (6th Cir. 2007); *Interstate Ins. Group v. Musgrove*, 11 F. App'x 426 (6th Cir. 2001).

State Farm has presented substantial evidence that Plaintiffs misrepresented material facts in the presentation of their claim. As one of the many examples before the Court, Plaintiffs claimed to have bought an extraordinary amount of clothing for their five children shortly before the fire, but their bank records do not support this contention. In response, Plaintiffs state that "they have not misrepresented material facts, but rather made a good faith effort to complete the PPI's as they were instructed by Jan McMillan, State Farm's adjuster." They claim that McMillan told them to complete the PPIs by going out to stores and finding something similar to what they had, and marking that price as the replacement cost of their item– what it would cost new, today. Mrs. Lincoln testified that the majority of their personal property was purchased at yard sales, consignment shops or had been gifts from family members.

To void the policy State Farm must show that Plaintiffs *intentionally* misrepresented their contents claim. This is a question of fact to be decided by the jury. If the jury finds Plaintiffs did make intentional misrepresentations of any material fact, then the entire policy is void as a matter of law.

### C. Bad Faith

In Count 2 of their Complaint, Plaintiffs allege State Farm is in breach of Kentucky's Unfair Claims Settlement Practices Act ("KUCSPA"), KRS § 304.12-230. This statute states that it is an unfair claims settlement practice for any person to commit or perform certain acts or omissions. Specifically, Plaintiffs allege State Farm "has not attempted in good faith to

10

effectuate a prompt, fair and equitable settlement of Plaintiffs' claim for which liability is clear," which would violate KRS § 304.12-230(6).

In Kentucky "an insured must prove three elements in order to prevail against an insurance company for alleged refusal in bad faith to pay the insured's claim:"

(1) the insurer must be obligated to pay the claim under the terms of the policy;
(2) the insurer must lack a reasonable basis in law or fact for denying the claim; and
(3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.

*Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993) (citation omitted). Furthermore, "there must be sufficient evidence of intentional misconduct or reckless disregard of the rights of an insured or a claimant to warrant submitting the right to award punitive damages to the jury." *Id.*

"[A]n insurer is . . . entitled to challenge a claim and litigate it if the claim is debatable on the law or the facts." *Id.* (citation omitted). Even if a jury ultimately finds that Plaintiffs did not intentionally misrepresent their contents claim, State Farm has submitted substantial evidence that they did. With regards to the dwelling claim, State Farm obtained opinions and estimates regarding the extent of the damage and the cost to repair, and paid Plaintiffs $132,853.93. They also immediately advanced Plaintiffs $10,000 towards their contents claim.

The Court finds that no reasonable juror could find that State Farm lacked a reasonable basis for denying Plaintiffs' claim. State Farm has shown that it did have a reasonable basis for doing so. Moreover, Plaintiffs have not proven any of the *Wittmer* elements, nor have they presented evidence of intentional misconduct or intentional disregard to justify punitive damages. Their sole argument, that "in the event State Farm is not successful in obtaining a

11

judgment relating to coverage under the policy and State Farm's Motion to Dismiss the bad faith claim is timely [*sic*] and not well-taken" lacks any support or reasoning. Therefore, Plaintiffs' bad faith claim must be dismissed.

**CONCLUSION**

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (DN 29) is DENIED IN PART and GRANTED IN PART.